IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARY JANE MILZ,

        Plaintiff,

vs.                                                No. Civ. 98-1142 SC/LFG

UNITED STATES OF AMERICA,
DEPARTMENT OF HEALTH AND
HUMAN SERVICES, INDIAN HEALTH
SERVICE,
        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Motion to Dismiss, filed April 19, 1999 [Doc. No. 5]. Defendant's motion is pursuant to Fed. R. Civ. P. 12(b)(6) – dismissal for failure to state a claim upon which relief can be granted. Defendant's motion also is, in the alternative, a motion for summary judgment. The Court, having read the motion and memoranda, and being apprised of the applicable law, concludes that, for the reasons set forth below, Defendant's motion to dismiss is well-taken.

**I.    STANDARD OF REVIEW - FED. R. CIV. P. 12(B)(6) MOTION TO DISMISS**

Granting a motion to dismiss for failure to state a claim "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." Ramirez v. Oklahoma Dep't of Mental Health, 41 F.3d 584, 586-87 (10th Cir. 1994) (internal quotations omitted); see Ayala v.

Joy Mfg. Co., 877 F.2d 846, 847-48 (10th Cir. 1989). When ruling on a Rule 12(b)(6) motion, a court must construe the plaintiff's complaint liberally and all well-pleaded allegations in the complaint must be accepted as true. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 510 (10th Cir. 1998). A claim may be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); see H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249-50 (1989).

## II. BACKGROUND

Plaintiff's complaint is for breach of contract. Plaintiff seeks damages in the amount of $3,795.58, as well as compensatory and consequential damages, pre- and post-judgment interest, and attorneys' costs and fees.

Plaintiff is a certified registered nurse working for Indian Health Service (IHS). In September 1996, the Division of Nursing Services at the Gallup Indian Medical Center (GIMC) had four vacant nursing positions and was aggressively seeking candidates to fill these positions. Plaintiff inquired about the possibility of transferring from the Navajo Area IHS Chinle Service Unit to the GIMC. In evaluating whether to apply for a transfer, Plaintiff spoke with IHS employees in the personnel department at the GIMC, specifically inquiring about the IHS policy to reimburse 5% of the purchase price of a new home for employees who agree to transfer (the 5% purchase price incentive). This policy was important to Plaintiff's transfer decision because she received low-cost government

housing at the Chinle Service Unit, but would not receive subsidized housing if she agreed to work at the GIMC.

In October 1996, the GIMC Nursing Supervisor, Mary Stafford, extended an offer of employment to Plaintiff for one of the vacant nursing positions. Stafford told Plaintiff to contact the personnel division within the GIMC to work out the transfer details. Plaintiff spoke with Julie Nelson in the Personnel Department at the GIMC. Plaintiff specifically asked Nelson about the 5% purchase price incentive offered by IHS, and was promised she would receive the 5% purchase price incentive if she transferred. This promise was confirmed by Sophia Blackgoat, the Personnel Department employee who assisted Plaintiff complete the necessary 5% purchase price incentive paperwork.

Relying on the promises made to her by Defendant's agents, Plaintiff completed her transfer paperwork and, in January 1997, purchased a home in the Gallup area. In February 1997, Plaintiff commenced work at the GIMC. Plaintiff submitted a travel order seeking reimbursement for $5,061.00 in real estate expenses. The order was approved by all authorized agents of Defendant, including the Director of Nursing, Floyd Thompson; the CEO of the GIMC, Dr. Timothy Fleming; and the Accounting Technician, Barbara Bedoni.

In April 1997, Plaintiff was informed she would not receive the 5% purchase price incentive. However, on May 12, 1997, Fleming confirmed Plaintiff's contractual right to the 5% purchase price incentive. Fleming asked Plaintiff to work with Thompson to receive payment. On or about May 29, 1997, Plaintiff received a relocation allowance

letter from Thompson recommending that she receive the 5% purchase price incentive. Plaintiff then spoke with the IHS Window Rock Area Office and was informed that Emma Kee, Head of Finance, would work with her to resolve the dispute and have IHS pay the amounts it had promised her. On May 30, 1997, Kee informed Plaintiff that all that was needed was a letter from her supervisor indicating the need for Plaintiff to purchase a home in Gallup and to confirm that the change in her start date at the GIMC was necessary because Plaintiff had been unable to find affordable housing in Gallup. Stafford, Plaintiff's supervisor, sent a letter to Kee.

On June 9, 1997, when Plaintiff contacted Kee regarding the status of her reimbursement check, she was told that the check had been issued but for a decreased amount. When Plaintiff refused to accept the check, IHS deposited the check directly into Plaintiff's account. On or about June 29, 1997, when Plaintiff met with Thompson, she was told that a federal auditor was investigating the case and reviewing the language of the IHS reimbursement application form. On March 9, 1998, the Executive Officer of the IHS Navajo Area Office, Ron C. Wood, wrote Plaintiff confirming she had exhausted her administrative remedies, indicating that his denial of the promised 5% purchase price incentive was conclusive, and that IHS would take no further review of Plaintiff's reimbursement claim.

### III. MOTION TO DISMISS

Defendant argues that the Federal Travel Regulations (the Regulations), 5 U.S.C. § 5724a and 41 C.F.R. Part 302-6, permit reimbursement for allowed expenses that are

4

actually incurred. The purchase price of a house is not an allowed expense under the Regulations and there is no 5% purchase price incentive. Furthermore, no agent of IHS had the authority to approve payment to Plaintiff in violation of the Regulations. Defendant further contends that even assuming Plaintiff's allegations are true – that IHS employees promised her she would be reimbursed 5% of the purchase price of her new residence if she transferred to the GIMC, and that the elements of equitable estoppel are established here – Plaintiff's complaint still must be dismissed because the Government cannot be estopped from denying Plaintiff's claim of expenses when those expenses are not reimbursable under the Regulations and not authorized for payment by Congress.

Plaintiff responds that the Defendant's employees were authorized to make the promises they made to her either under the Regulations' reimbursement provisions or the Regulations' reimbursement limitation waiver provision. Plaintiff further contends, in the alternative, that if the 5% purchase price incentive was promised her in error and without statutory authority, equitable estoppel should apply against Defendant.

This is a hard case. Nevertheless, unfair as it may be, I am forced to conclude that, even if Plaintiff's factual allegations are true, no relief is available to her.

    A.    **Reimbursement of Real Estate Expenses**

The Government is required, to the extent allowed by law, to reimburse "an employee for expenses required to be paid by [her] in connection with" the purchase of a dwelling at her new official station. 41 C.F.R. § 302-6.1 (July 1996); see OPM v. Richmond, 496 U.S. 414, 416 (1990) ("[P]ayments of money from the Federal Treasury

are limited to those authorized by statute. . . ."). The applicable Regulations section provides that expenses of the purchase of a home at the employee's new duty station are reimbursable so long as the reimbursement does not exceed the lesser of 5% of the purchase price or $11,198. See 5 U.S.C. § 5724a(a)(4)(A), (B)(ii) (1996); 41 C.F.R. § 302-6.2 (July 1996). The Regulations further specify what is a reimbursable expense (e.g., title searches, surveys, loan application fees, credit report costs) and what is a nonreimbursable expense (e.g, property taxes, maintenance costs, loan interest). See 41 C.F.R. § 302-6.2. The purchase price of a house is neither explicitly listed as a reimbursable nor a non-reimbursable expense. However, it is implicit from the language of § 5724a and § 302-6.1 and from what expenses are reimbursable (and nonreimbursable) under § 302-6.2 that Congress intended only for expenses *surrounding* the purchase of a house to be reimbursable – not the purchase price itself, or some percentage of that price. Consequently, IHS employees were not authorized to promise Plaintiff the 5% purchase price incentive if she transferred to the GIMC.[1]

Additionally, neither of the two waiver provisions in the Regulations are applicable to this case. First, in September 1996, Congress amended the Regulations and provided that an agency head or his designee is authorized to waive reimbursement limitations "for any employee relocating to or from a remote or isolated location who

---

[1] I note that while Plaintiff is not entitled to the promised 5% purchase price incentive, she may be entitled to a recruitment and relocation bonus or a retention allowance. See 5 U.S.C. §§ 5753, 5754 (1996, 1999).

would suffer hardship if the limitation were not waived." 5 U.S.C. § 5738(a)(2) (1999); see 41 C.F.R. § 302-1.15 (July 1998). Unfortunately for Plaintiff, this waiver provision did not become effective until March 1997. See 5 U.S.C. § 5738 (historical and statutory notes). Because Plaintiff began her duty at the GIMC in February 1997, § 5738(a)(2) and § 302-1.15 do not apply to this case. See 41 C.F.R. §302-1.3(d) (July 1996) (regulatory provisions in effect on employee's effective date of transfer govern reimbursement); 62 Fed. Reg. 13,765 (March 1997). Second, in February 1997, the government was authorized to waive collection of relocation expenses paid in excess of statutory authority when equity demanded it. See 5 U.S.C. § 5584 (1996, 1999). This provision, however, only applies when there has been an overpayment – which is not the situation here. Therefore, the agents of IHS had no statutory authority to waive the reimbursement limitations of the Regulations.

      B.     **Equitable Estoppel**

Equitable estoppel is a remedial doctrine by which a party may be precluded, because of its own acts or omissions, from asserting a right or defense to which it otherwise is entitled. See Heckler v. Community Health Servs., 467 U.S. 51, 59 (1984). Equitable estoppel, however, generally is unavailable when applied against the federal government in an action to compel the payment of money from the public treasury in contravention of statutory authorization or appropriation – even when such unauthorized monetary payment was promised to the claimant by government employees. See Richmond, 496 U.S. at 415-16, 423-24. Individual hardship cannot undermine the

7

interest of the citizenry as a whole in constitutional fiscal expenditures. Moreover, to bind the Government to the mistaken promise made to Plaintiff here would mean that the Government "would be compelled by a court to do what Congress had forbidden," Trout v. Garrett, 780 F.Supp. 1396, 1425-26 (D.D.C. 1991), and would vest power belonging to the Legislative Branch in the Executive Branch, in contravention of the Constitution. As I "cannot 'estop the Constitution,'" I must reject Plaintiff's equitable estoppel contention. Downtown Med. Ctr./Comprehensive Health Care Clinic v. Bowen, 944 F.2d 756, 771 (10th Cir. 1991) (quoting Richmond, 492 U.S. at 434).

**NOW, THEREFORE, IT IS ORDERED** that Defendant's Motion to Dismiss should be, and is hereby, GRANTED.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff: Randolph H. Barnhouse, ROSEBROUGH & HOWE, P.C., Gallup, New Mexico

Counsel for Defendant: Marilyn S. Hutton, ASSISTANT U.S. ATTORNEY, Albuquerque, New Mexico